### STATE OF VERMONT v. JOHN D. HORN.

*Criminal Law. Bigamy. Evidence. Handwriting.*

A paper purporting to be a marriage certificate of a marriage in another State, signed by a person as justice of the peace, is not alone competent evidence of the marriage, and should be excluded in a trial for bigamy. To make it proof of a former marriage, there should be additional evidence that there was such person who was a justice, and that by the laws of that State a justice has authority to solemnize marriages, and that the signature to the certificate is genuine. Knowledge of the presiding judge of the statute of such State, in respect to the authority of justices, is not proof. The statute must be produced.

Proof that a letter, in reply to one sent .to the address in the certificate, had the same signature as the signature of the certificate, does not prove the genuineness of the latter, the signature to the letter not being admitted or proved to be genuine.

In a trial for bigamy in which the respondent admitted a previous marriage ceremony but claimed it was a mock ceremony, a letter from the respondent to the woman claiming the previous marriage, which tended to show how he regarded the ceremony and that it was not a mock ceremony, *held* admissible.

INDICTMENT for bigamy. Plea not guilty. Trial by jury, December term, 1869, BARRETT, J., presiding.

The government gave evidence to the effect that the respondent was regularly married January 17th, 1869, in Chester, Vermont,

to Miss Julia A. Miller of that town ; that in April, 1869, a wo-
man came to Chester claiming to be his wife by a previous mar-
riage solemnized in Scranton, Pennsylvania ; that the respondent
was thereupon arrested upon the complaint of the town grand juror
of Chester, and brought before a justice of the peace, who had is-
sued a warrant in pursuance of said complaint, which complaint
charged him with the crime of bigamy ; that upon the hearing be-
fore the justice the woman from Pennsylvania was brought into
court and the respondent claimed that the marriage ceremony with
her in Scranton was a mock ceremony gone through with between
them when he and others were on a spree and had been drinking ;
that thereafter he cohabited with her ; and that he said something
about having made some preparations for keeping house, and that
he acknowledged that he had written to her as his wife.

The government offered in evidence a marriage certificate, signed
by Benjamin Jay, justice of the peace, of the marriage of the re-
spondent to Clara Van Arsdale, May 6, 1868, and gave evidence
tending to show that said woman had the same with her and pro-
duced it and put it into the hands of the attorney for the State on
the occasion of that court of inquiry, and during the examination
claimed her to be the woman named in it, and also gave evidence
tending to show that the handwriting in the same, and in the sig-
nature thereto, is the genuine handwriting of Benjamin Jay, of
said Scranton ; but gave no evidence, except this and the certifi-
cate itself, that he was a justice of the peace, nor that, by the laws
of Pennsylvania, a justice of the peace was authorized to solem-
nize marriage in that State.    Said certificate was objected to by
the respondent, but it was admitted by the court, to which the re-
spondent excepted.

For the purpose of showing how the respondent understood and
regarded said marriage ceremony, at Scranton, and that he did
not regard it as a mock ceremony, the government offered a letter
dated Utica, July 27, 1868, and proved to be written and signed ·
by the respondent, and produced and furnished by said woman to
the attorney for the State, during the examination in said court
of inquiry.    To this the respondent objected ; but it was admit-
ted, and the respondent excepted thereto.

As evidence tending to show that the handwriting in said marriage certificate, and the signature thereto, is the genuine handwriting of Benjamin Jay, of Scranton, Pa., Hugh Henry, who acted as attorney for the State in the proceedings before the justice, testified that soon after said justice court he wrote a letter on the subject of said marriage to the address of Benjamin Jay of Scranton, Penn., and received a reply thereto, signed by that name, and the said certificate and signature are in the same handwriting as said reply. On cross examination he testified that he did not know such a man, and had no other knowledge of his handwriting. This testimony was received without objection. No other witness testified on the subject of the genuineness of said handwriting. The respondent offered no evidence.

The court charged the jury fully in all respects, and among other things told them, if they should find that said marriage certificate was filled out and signed by the person whose name as justice of the peace was appended to it, it would be proper evidence for them to consider, in connection with the other evidence in the case, as tending to show the fact of lawful marriage between the parties; but if they should not so find, it should be laid out of the case, and not be regarded by them as evidence; and also instructed them as to the letter, that it was evidence only for the purpose for which it was offered, as aforesaid. The presiding judge also stated in the charge that of his own knowledge, by the laws of Pennsylvania, justices of the peace were authorized to solemnize marriage in that state.

No exception was taken to the charge. The jury returned a verdict of guilty.

*Geo. L. Fletcher* and *S. Fullam*, for the respondent.

The laws of another state are to be proved as facts. *Taylor* v. *Boardman*, 25 Vt., 581; 1 P. Williams, 431. The marriage certificate was not competent evidence. *Com.* v. *Morris*, 1 Cush., 391; 2 Arch., 1039; 8 Green. R., 75. As to the proof essential in such case, see *State* v. *Roswell*, 6 Conn., 446; 7 Johns. R., 314; 13 M. & W., 261.

*James N. Edminster*, State's attorney, for the State, cited Gen. Sts., ch. 117, § 7, and, that the marriage certificate was properly ad-

mitted, 2 Green. Ev., § 463 ; *Doe* v. *Greenbrooke*, 4 Adol. & El.,
N. S., 406 ; *State* v. *Abby*, 29 Vt., 65 ; and to the point that a
court in the trial of a crime may proceed upon its own knowledge
of laws of another state, *Middlebury Col.* v. *Cheney*, 1 Vt., 336 ;
*Brooks* v. *Chaplin*, 3 Vt., 281 ; *State* v. *Rood*, 12 Vt., 396 ; *Ib.*,
589 ; and that the testimony in relation to the handwriting in the
certificate was proper, 2 Starke Ev., 652.   No objection was made
to this evidence, as being incompetent.   The letter was properly
admitted. *Miller* v. *Bernerd*, 8 Bing., 376 ; *Trelawney* v. *Coleman*,
1 B. & Ald., 90 ; *Edwards* v. *Crock*, 4 Esp., 37 ; *Goddard* v. *Put-
nam*, 22 Maine, 363 ; 1 Phillips Ev., 81; 1 Green. Ev., § 254-*a*.


The opinion of the court was delivered by

PECK, J.   The paper purporting to be a marriage certificate of
a marriage in the State of Pennsylvania, admitted against the
objection of the respondent, was incompetent evidence and ought
to have been excluded.   It did not prove itself.   Aside from the
certificate there was no evidence that there was any such man as
Benjamin Jay who was a justice of the peace, or that by the laws
of Pennsylvania a justice of the peace has authority to solemnize
marriages.   The case states that the presiding judge stated to
the jury, in his charge, that of his own knowledge justices of the
peace by the laws of Pennsylvania had such authority, but that is
not proof.   The laws of other States, when material to the merits
of a case, cannot be established except by legal evidence, and if
statute laws, they must be proved by the production of the stat-
ute.   If a justice of the peace has such authority by the laws of
Pennsylvania, it is to be taken to exist by statute.   There was no
legal evidence of the handwriting of any Benjamin Jay to the
certificate, and most clearly was there no legal proof of the hand-
writing of the Benjamin Jay by whom the certificate purports to be
signed.   It appears the only evidence, to prove the signature of
Benjamin Jay to the certificate, was the testimony of Hugh Henry,
who acted for the State in the proceeding before the justice against
the respondent ; who testified that soon after the justice court he
wrote a letter on the subject of said marriage, to the address of
Benjamin Jay, of Scranton, and received a reply thereto, signed

by that name, and that the said certificate and signature is in the same handwriting as said reply ; and that he did not know such a man, and had no other knowledge of his handwriting. The only thing in this testimony that has the semblance of evidence, is the opinion of the witness that the signature of the certificate and the signature of the letter he received were the same handwriting, judging of course only by comparison. It is an essential part of the rule that admits the comparison of handwriting as evidence to prove a disputed signature, that the genuineness of the standard, with which the disputed signature is to be compared, must be either admitted, or directly and very clearly proved. There is no such proof, if any at all, that Benjamin Jay signed the letter, as to justify setting that signature up as a standard by which to judge of the genuineness of the signature of the certificate. This being so, the case of *Commonwealth* v. *Morris*, 1 Cush., 391, is a full authority against the ruling of the county court admitting the certificate. It was held in that case that such certificate unauthenticated was not evidence, and that it received no additional weight by coming from the custody of the woman alleged to be the wife of the respondent. That decision was made under the Massachusetts statutes of 1840 and 1841, which go quite as far in modifying the strict rule of the common law, by allowing marriage to be proved on the part of the prosecution by circumstantial and presumptive evidence, as our statute does. When circumstances are relied on as proof of a disputed fact, the circumstances must still be proved by competent evidence. It is true, the case states that this testimony of Henry was received without objection, but as it proves nothing, it does not render the certificate, which was objected to, admissible.

As to the exception to the admission of the letter of the respondent, the letter, in connection with other evidence in the case, was admissible for the purpose for which it was admitted.

There are other important questions discussed in the case, which we have not noticed, as they do not come within the scope of the exceptions taken at the trial.

Judgment reversed, and new trial granted.