## THE STATE v. WILLIAM H. SKILLMAN.

Argued February 19, 1908—Decided June 8, 1908.

1. A genuine handwriting in evidence for one purpose may be used as a standard of comparison to determine the genuineness of the handwriting of another document in issue.

2. Enlarged photographic reproductions of a will and of letters containing the disputed handwriting were admissible, after proper proof, for the purpose of making the proportions plainer as an aid to the jury.

3. Evidence offered in rebuttal is subject to the discretion of the trial court, and the court's admission or rejection thereof is reviewable only in cases of gross abuse.

4. It was not erroneous for the court to refuse to instruct the jury that they must be satisfied beyond a reasonable doubt that witnesses told the truth. The extent of the requirement is that the jury be satisfied of the defendant's guilt upon the whole case beyond a reasonable doubt.

5. It is not erroneous for the trial court to refuse to charge an abstract proposition of law; and a request to charge must be based upon some facts in evidence which are relevant to the issue.

6. Comments of the trial court upon the testimony for the purpose of explaining, applying or elucidating it for the convenience and assistance of the jury are not improper.

7. The fact that defendant did not testify could not be used against him on the trial of an indictment for forging and uttering; but the fact that his physician explained defendant's failure to testify by alleging his ill health was a fact in the case from which the jury might draw their own reasonable inference.

On error to the Somerset Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and MINTURN.

For the state, *John F. Reger.*

For the defendant in error, *Clark & Case.*

The opinion of the court was delivered by

MINTURN, J. The defendant was indicted upon the charge of forging and uttering a paper-writing purporting to be the

last will and testament of William Lanehart, deceased, and was found guilty by the jury of the uttering. The writ of error presents certain exceptions taken at the trial by defendant, relating almost entirely to the admissibility of testimony. The first and second of these exceptions relate to the admission of the testimony regarding the execution of what was called in the case the "Race Will," a document proved to have been executed by deceased in the city of New York, in and by which, after making certain specific bequests to friends and relatives, and $3,000 to his sister Mary J. Lanehart, he directed that the residue of his estate be divided equally among his brothers and sisters, and appointed John N. Race and Laura Kellogg, his executor and executrix, respectively.

The admission of this will was competent. It was within the line of proof for the state to introduce the will for the purpose of establishing the fact that the testator had executed and preserved a prior will, radically inconsistent with the provisions of the document drawn by the defendant; and the Race will being in evidence for that purpose could be used by the state as a standard for comparison by the jury of the defendant's handwriting. In England this rule is established and liberalized by an act of parliament. 28 *Vict., c.* 18. But whatever diversity of judicial opinion may exist in this country upon the admissibility of writings otherwise irrelevant to the issue solely for the purpose of comparison, there is quite a uniformity of opinion that a genuine writing in evidence for one purpose may be properly used as a standard of comparison by the jury to determine the genuineness of the handwriting of another document in issue. *Yeomans* v. *Petty,* 13 *Stew. Eq.* 495; *Shaw* v. *Bryant,* 157 *N. Y.* 715; *Himrod* v. *Gilman,* 147 *Ill.* 293; *Steph. Dig. Ev.* 289; 17 *Cyc.* 163, and cases.

The court admitted against objection photographic reproductions of the disputed will and signatures, and other signatures of the size of the originals, which were in evidence, and also photographs of letters, containing the signature enlarged twenty-four times without a like enlargement of a

standard signature, and this admission forms the basis of an assignment of error, upon which defendant cites the case of *Howard* v. *Illinois Trust Co.*, 189 *Ill.* 568. That authority approves the admission of enlarged photographs as evidence, upon the ground that they make the proportions plainer, and to that extent it is consistent with the weight of authority. *Marcy* v. *Barnes*, 16 *Gray* 161; 17 *Cyc.* 414, and cases cited; *Rowell* v. *Fuller's Estate*, 59 *Vt.* 688. But we cannot give adherence to the view that photographic copies of a disputed document are inadmissible, because the original has been admitted. If such copies were offered as substantive proof of the original document they would be clearly inadmissible. But where the sole purpose is to use the photographs to illustrate and elucidate a contention which forms the gravamen of the case, such procedure seems to be as reasonable as the use of a magnifying glass would be for the same purpose.

We find no ground for complaint in the third assignment of error which is based upon the exclusion by the court of certain testimony which the defendant attempted to elicit from cross-examination of the witness Mary M. Steels, who was called by the state to prove certain admissions and statements made by the defendant in a contest over the will in question in the Orphans' Court of Somerset county. It is manifest that the questions upon cross-examination refer to another period than that involved in the examination in chief, and were therefore properly excluded. It may be further said that the court's action in this particular, as in other instances throughout the trial of the case, is not properly before this court for review, as the record indicates that no reason was given at the trial for the exception taken. *Columbia Delaware Bridge Co.* v. *Geisse*, 9 *Vroom* 39; *State* v. *Hendricks*, 41 *Id.* 41.

A witness, McMurty, who qualified as an expert, testified that the signatures of the alleged will and a genuine signature were not written by the same person. When asked whether he had had any experience with signatures first written in pencil and then traced over with ink, he replied in the negative. He was then asked whether he was competent to pass upon that

kind of a signature. The question was objected to and properly overruled, because, by his own admission, he was not qualified. Defendant then moved to strike out the testimony, which motion was refused. We perceive no error here, for the witness was qualified to express an opinion eliminating the tracing, and the state could not at that time foresee that the pencil marking was not to be disputed.

Miss Kellogg was allowed, against objection, to testify to a conversation had with the testator regarding the defendant, during the year 1905. The question called for a conversation regarding Mr. Skillman, the defendant, but was objected to and allowed; and the witness said that the testator told her that the defendant undoubtedly burned his barns in order to get the insurance money. This evidence was admitted after the defendant had cross-examined the witness regarding the social relations of testator and defendant, and had her testify over objection that they were friendly. In view of this circumstance, and of the fact that the record shows that the object of the question was to contradict the fact that the relations were intimate between defendant and testator as brought out by the cross-examination, the defendant should have given the court the reason for his objection. Still, if this had been done, the evidence was competent in denial of a fact introduced by the defendant.

Objection was also made to the testimony of Hagaman regarding the relations between the testator and defendant. This subject was opened by the defendant on cross-examination of Miss Kellogg. We think it was competent to show that the parties were not friendly as stated in the disputed will, the inference being that the testator would hardly refer to defendant as his friend, if his state of mind was such as his declarations indicate. The objection stated was that the question was immaterial and not in rebuttal. If it was immaterial no injury was done, and what evidence may be admitted on rebuttal is a matter of discretion, not reviewable except in case of gross abuse, but in this case the defendant offered evidence of the friendly relations between defendant and testator, which it was competent for the state to rebut.

No reason was given for the exception taken by defendant on the motion to strike out the testimony of the witness Ely. It was clearly not responsive, and the striking out was no injury to the defendant.

The question as to the condition of defendant's health in the winter of 1905 was overruled. This was not important, and in nowise harmful to defendant, for, if the defendant's witnesses tell the truth, the testator went to defendant's house and executed the will, and it is admitted that defendant was able to prepare the will.

Exception was taken to the charge of the court upon the fact that defendant did not offer himself as a witness. Miss Kellogg and Mr. Stryker both testified to admissions made by defendant. Miss Kellogg testified that defendant told her that his daughter (who was a witness) was conscientious, and counsel had difficulty in making her say she saw testator use the lead pencil on the day the will was executed. This was an important fact, because, if the testator had not traced the signature over one made with a pencil, it tended to support the theory that the disputed signature had been copied in pencil, and then traced with ink. Mr. Stryker testified that the defendant had shown him the will, and said, "I have used all precautions in writing this will, and I don't intend for all hell to change it." This testimony, if true, had a direct bearing on the genuineness of the paper. Defendant, in the face of this testimony, failed to offer himself as a witness to disprove these facts—facts which he could meet and deny, and the explanation of which would reach beyond a mere denial of guilt. We think the situation thus presented falls within the rule laid down in *Parker* v. *State,* 32 *Vroom* 308, and *State* v. *Wines,* 36 *Id.* 31; permitting the court to comment on defendant's silence.

It is also urged as error that the court refused to charge when requested as follows: "That the evidence that William Lanehart did not write the disputed signature is largely, if not wholly, circumstantial, while some of the evidence given at the trial is direct and positive, and in order to reach a verdict of guilty the jury must be satisfied, beyond a reasonable

doubt, from the evidence produced before them at this trial that the witnesses who have testified that they saw William Lanehart write the disputed signature did not tell the truth." All that this request embodies is that the jury must be satisfied, beyond a reasonable doubt, that the witnesses who testified that they saw the disputed signature written did not tell the truth. The court was not bound to charge in the words stated in the request, for the jury was not bound to be satisfied beyond a reasonable doubt that the witnesses for the defendant did not tell the truth. All that is required is that the jury be satisfied of the defendant's guilt beyond a reasonable doubt, and that depends upon the view they take of the whole case.

It is also urged as error that the court refused to charge as follows: "In weighing evidence the rule is elementary that conflicting testimony must be reconciled without imputing willful perjury to any witness unless the conclusion is unavoidable." It was held in 1887, in *Rickerson* v. *State,* 78 *Ga.* 15, that, in a criminal case, "It is error to refuse to charge that, if there was apparent conflict in the evidence, it was the duty of the jury to reconcile it, if they could, and not impute perjury to any witness." While we doubt the propriety of this conclusion, because it seems to us an invasion of the province of the jury, the present request to charge does not fall within the case referred to, for here the court was not asked to charge "that if there was any conflicting evidence it was the duty of the jury," &c., but, rather, to charge an abstract proposition. A request to charge must be based upon some facts which the evidence tends to prove, and the court should not give instructions which are not relevant to the proofs. The request embodies nothing of advantage to the defendant. An instruction which would limit the jury in dealing with the credibility of witnesses, it seems to us, would invade the right of the jury to deal with the only question submitted to them, and an instruction that they must reconcile the testimony without imputing perjury unless it is unavoidable states an abstract proposition which the

evidence does not warrant, and the refusal of the court to so charge therefore did not prejudice the defendant.

The court refused to charge that the testimony of a witness who speaks from his personal knowledge "is more satisfactory than the testimony of another who speaks of matters which lie in opinion only," and that the testimony of a witness who was present, and who saw the testator sign the disputed document; should outweigh the statement of another witness who testifies that he is acquainted with the signature, and does not believe it to be genuine. This request was properly refused. Whether the testimony of one witness is more "satisfactory" than that of another, is to be determined by the jury upon the facts and circumstances; because the word "satisfactory," as there used, means manifestly truthful, and whether both witnesses are equally credible can only be determined by the jury under all the circumstances of the case.

The court refused to charge that the verdict would not establish or set aside the will, and that no legacies mentioned in the will would be paid upon a verdict of not guilty, nor would payment thereof be refused if the verdict were guilty. This request was properly refused. There was no evidence in the case which required any such instruction, and the matters set forth were not within the issue tried.

It is also assigned as error that the court refused to charge "the fact that the defendant did not testify cannot be considered as evidence against him." This, we think, was substantially charged. The court instructed the jury that the defendant was not bound to offer himself as a witness, and that in not testifying he was exercising his right as a citizen. Besides this, the defendant, although present in the courtroom, produced a physician, who testified that the defendant could not safely offer himself as a witness, because of his condition of health, and it was thus made to appear that the defendant was not relying upon any constitutional right he possessed, but on the evidence which was presented to the jury, viz., whether his condition of health was a sufficient explanation for his refusal to testify. He had a right to rely upon his legal right, and he did not choose to do so, but

excused himself by raising a question of fact, and if the jury found that fact against him, we think they were justified in drawing the inference that he refused to offer himself, because he could not truthfully deny the important facts bearing upon the question of his guilt or innocence.

The comments of the court upon the testimony during the charge were made for the purpose of explaining, applying and elucidating the testimony for the convenience and assistance of the jury, and, under the well-established rule, present no ground for exception. *Donnelly* v. *State, 2 Dutcher* 463; *State* v. *Valentina, 42 Vroom* 553.

An examination of the remaining exceptions taken, where reasons were assigned for them at the trial, convinces us that they are without legal substance, and we therefore conclude that the judgment of conviction should be sustained.