ST. LOUIS NATIONAL BANK, Respondent, v. ISABELLA HOFFMAN, Appellant.

St. Louis Court of Appeals, March 15, 1898.

1. **Construction of Statute**: RULE OF CONSTRUCTION ON STATUTE ADOPTED FROM ANOTHER STATE OR FOREIGN COUNTRY. In adopting the statute of another state or foreign country which has received a known and settled construction by the courts where it originated, the meaning thus given the act, if not opposed to our constitution or laws, will be presumed to be the meaning intended by our legislature.

2. **Evidence.** In the case at bar plaintiff alleged that defendant forged the name of her deceased husband to the check which it paid her. *Held*, that plaintiff had a right to offer in evidence other writings admitted or proven to be in defendant's handwriting as standards of comparison with the disputed writing.

3. **Evidence**: STATUTORY CONSTRUCTION: HANDWRITING. According to the act approved April 8, 1895, page 284 of the Session Acts 1895, "any writing" without regard to its relevancy, if proven or conceded to be genuine, may be submitted to witnesses to be compared with the disputed writing, and the writing itself, as well as the evidence of the witnesses, shall go to the court and jury as evidence of the "genuineness or otherwise" of the writing in issue.

*Appeal from the St. Louis City Circuit Court.*—Hon. Jacob Klein, Judge.

Affirmed.

James P. Maginn and Julian Laughlin for appellant.

The circuit court was right in excluding the checks signed by the defendant, which the plaintiff offered in evidence, and desired to use as standards of comparison with the signatures on the check in dispute; and its action afforded no ground for sustaining plaintiff's motion for new trial. Greenl. on Ev., secs. 580, 581; Tome v. R. R., 39 Md. 36; Peck v. Callaghan, 95 N. Y. 74, in which the statute amending the common law rule (substantially the same as our Missouri amendment) is construed. State v. Minton, 116 Mo. 605; Doud v. Reid, 53 Mo. App. 553; Singer Mfg. Co. v. Clay, 53 Mo. App. 412; Edmonston v. Henry, 45 Mo. App. 346; First Nat. Bank v. Stanley, 46 Mo. App. 449; Vinton v. Peck, 14 Mich. 287. The court below sustained the motion for a new trial in this case because he felt himself bound to follow the case of Elsenrath v. Kallmeyer, 61 Mo. App. 430. In that case, Judge Bond, writing the opinion, was evidently misled by a false analogy. The three cases cited by him, Lachance v. Loeblein, 15 Mo. App. 460; Rose v. Bank, 91 Mo. 399; State v. Clinton, 67 Mo. 380, do not support the view taken by Judge Bond, but are authorities, properly considered, for the opposite view. Judge Bond overlooked the fact that the signature or handwriting to be used in comparison, must be the genuine handwriting or signature of the same person whose signature or handwriting is in issue. There has never, as far as I am aware, been a claim made, that the handwriting or signature of persons other than the person

whose handwriting is denied, could be used as a standard of comparison with the disputed handwriting, until it was so held in the case of Elsenrath v. Kallmeyer, *supra*. The mind of Judge Bond evidently was dwelling mainly on the sufficiency of the evidence to establish the genuineness of Elsenrath's signature, and overlooked the fact that, for comparison, only some genuine signature of the deceased, F. Metzler, could be used with which to compare the disputed signature of F. Metzler. Doud v. Reid, 53 Mo. App. 553.

J. D. Johnson and Jos. S. Laurie for respondent.

The old rule upon this subject has been superseded and the conditions thereof obliterated by the recent statute of this state, which reads as follows: "Comparison of the disputed writing with any writing, proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses, and such writings, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." Laws 1895, p. 284. Language can not be more comprehensive than that set forth in the foregoing act of the legislature. It says "any writing," no matter if collateral or irrelevant and no matter if signed by the alleged forger, when shown to the satisfaction of the court to be genuine, may be introduced in evidence and compared with the disputed signature for the purpose of disproving the same. See Schroeder v. Seittz, 68 Mo. App. 233. If there was any question whatever as to the propriety of admitting said checks in evidence under the old rule, it is clearly removed by the act of the legislature above cited.

Bond, J.—On the sixteenth of November, 1895, plaintiff sued defendant for $2,149.44, alleged to be

due it from her on account of the payment of that sum upon a check signed and indorsed by John Hoffman, the husband of defendant, which signature and indorsement plaintiff alleged were fraudulently signed and affixed to said check by the defendant. The defendant admitted all the allegations of the petition, except the charge of forgery against her. There was a trial of this issue and evidence tending to support the allegations of the petition, and also tending to support defendant's denial in her answer. Among other things, the plaintiff offered in evidence five checks conceded to have been signed by the defendant about the time of the presentation of the check in controversy, stating that its purpose was to show by the evidence of her signature upon these checks that she wrote the signature of John Hoffman and the indorsement of his name on the check referred to in the petition. The court excluded this evidence. Plaintiff duly excepted and made the ruling of the court one of the grounds of its motion for a new trial. The court thereafter sustained the motion for new trial, for the reason that it had erred in this ruling. Defendant appealed.

The question presented is, did the reason given by the court for its action justify the award of a new trial? The rule of evidence applicable on the trial of this case as to the point under review is contained in section 8944a, added to the Revised Statutes of 1889, by the act of the legislature, approved April 8, 1895, and contained in the Session Acts of that year, page 284, and is, to wit: "Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute." The foregoing enactment is a

literal copy of the act of parliament contained .in' the English Common Law Procedure Act of 1854, section 27. In adopting the statute of another state or foreign country which has received a known and settled construction by the courts where it originated, the meaning thus given the act, if not opposed to our constitution or laws, will be presumed to be the meaning intended by our legislature. Skouten v. Wood, 57 Mo. 380; Skrainka v. Allen, 76 Mo. loc. cit. 389; Snyder v. R'y, 86 Mo. loc. cit. 618; Bowers v. Smith, 11 Mo. loc. cit. 52. The act under review was applied in 1860 in England to the following facts: The chancery court directed an issue to be tried as to the validity of certain codicils set up by plaintiff and effecting the interests of defendant as devisee under the will. Plaintiff called an attesting witness to prove the execution of the codicils by the testator. Upon examination this witness was asked if the handwriting of the codicils was not his own, and upon his denial various other writings admitted to be his own, were permitted to be laid before the jury for a comparison of handwriting. Erle, C. J. and Pollock, C. B., held that this was proper under the terms of the act, and the jury returned a verdict for defendant, on the ground that the codicils were forgeries and written by the witness. Cresswell v. Jackson, 2 Fos. & Fin. Rep. 24. The effect of this decision is to determine the construction of the act by the English courts on the very point involved in the case at bar, for the contention of appellant is that no other writings, whether genuine or not, than those of the party whose handwriting is denied, can be offered as standards of comparison, and the decision of the English courts is against such a limitation of the act. According to the case above cited, the terms of the act authorize the reception of any writings (proved to the satisfaction of the judge to be genuine) of the person

alleged to have forged another's handwriting for the purpose of proving the charge. In the case at bar plaintiff alleges that defendant forged the name of her deceased husband to the check which it paid to her. Under the principle settled in the English case it had a perfect right to offer in evidence other writings admitted or proven to be in her handwriting as standards of comparison with the disputed writing. The construction given the act by the English courts is the only one of which it is susceptible, if regard is had to the plain and unambiguous terms employed. According to the language of the act "any writing," without regard to its relevancy, if proven or conceded to be genuine, may be submitted to witnesses to be compared with the disputed writing, and the writing itself, as well as the evidence of the witnesses, shall go to the court and jury as evidence of the "genuineness or otherwise" of the writing in issue. This broad language of the act plainly implies a right to disprove the disputed writing: *First*, directly, by a comparison thereof with other writings of the alleged signer. *Second*, indirectly, by a comparison thereof with other writings of the alleged forger of the disputed writing. If the construction contended for by appellant (that only other writings of the alleged signer may be offered in evidence) were correct, it would necessarily result that a party, attacking the genuineness of a writing would be deprived of one of these legitimate methods of disproof. A construction limiting in any wise the full extent of inquiry accorded by law, should not be given to an act, unless positively required by the terms used. The construction which the act under review received, after its adoption in England, is in exact harmony with the trend of the law in Missouri. Elsenrath v. Kellmeyer, 61 Mo. App. 430. This strengthens the legal presumption that our subsequent adoption of the English act

embraced an adoption of the full meaning given to it by the English courts. Our conclusion is that the reasons given by the trial court for the award of the new trial in this case were correct, and its order to that effect is affirmed. All concur.